699-15

ORIGINAL

In The
Court of Criminal Appeals
Austin, Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 14 2015

Abel Acosta, Clerk

Willie Frank Jackson, Appellant, pro se

v.

The State of Texas, Appellee

FILED IN
COURT OF CRIMINAL APPEALS

JUL 14 2015

Abel Acosta, Clerk

Petition For Discretionary Review
from the Court of Appeals
Sixth Appellate District of Texas at Texarkana
No. 06-14-00097-CR

CAUSE NO. _____

| | | |
|---|---|---|
| Willie Frank Jackson | X | In The Texas Supreme Court |
| PRO SE | X | Of Criminal Appeals |
| V. | X | |
| The State of Texas | X | Austin, Texas |

Cause No. 29295 + 06-14-00097-CR

## Petition For Discretionary Review

To The Honorable Justice of Said Court:

New Comes Willie Frank Jackson, pro se, and files this "Petition For Discretionary Review" pursuant to the provisions of the Texas Rules of Appellate Procedure in support of his request for the decision of the Court of Appeals in the Sixth District of Texarkana, Texas, be REVERSE IN CAUSE NO. 29295 + 06-14-00097-CR and acquittal, as follows:

# Table Of Contents

Table of Contents _____ 2

Index of Authority _____ 3

Statement Regarding Oral Argument _____ 5

Statement of Case _____ 6

Statement of Procedures History _____ 7

Grounds For Review _____ 8

Argument _____ 9

Prayer For Relief _____ 18

Inmate Declaration _____ 19

Certificate of Service _____ 19

# Index of Authorities

## Federal Cases:

Dunn v. United States, 284 U.S. 390, 393; 52 S.Ct. 189 (1932) _____ 11

Illinois v. Allen, 397 U.S. 337, 344; 90 S.Ct. 1057 (1970) _____ 16

Jackson v. Virginia, 443 U.S. 307, 319; 99 S.Ct. 2781 (1979) _____ 9

Perez v. United States, 501 U.S. 923, 936 (1991) _____ 16

United States v. Gagnon, 470 U.S. 522, 528 (1985) _____ 16

United States v. Powell, 469 U.S. 57; 105 S.Ct. 471 (1984) _____ 11

In re Winship, 397 U.S. 358, 364; 90 S.Ct. 1068 (1970) _____ 9

## State Cases:

Barnes v. State, 62 S.W.3d 288, 297 (Tex. App.--Austin 2001 pet. ref'd) _____ 10

Cain v. State, 958 S.W.2d 404 at 407 (Tex. Crim. App. 1997) _____ 10

Cardenas v. State, 30 S.W.3d 384, 389-90 (Tex. Crim App. 2000) _____ 9

Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996) _____ 10

Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) _____ 10

Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) _____ 10

Fisher v. State, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993) _____ 9

Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994) _____ 10

Glasscock v. State, 061312 TXCA6, 06-11-00239-CR (mem. opin.) _____ 17

Goodman v. State, 66 S.W.3d 283 (Tex. Crim. App. 2001) _____ 12

Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992) _____ 10

Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) _____ 10

Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) _____ 10

King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) _____ 12

King v. State, 638 S.W.2d 903 (Tex. Crim. App. 1982) _____ 12

Long v. State, 823 S.W.2d 259, 282-83 (Tex. Crim. App. 1991) _____ 17

Mendoza v. State, 1 S.W.3d 827, 830-31 (Tex. App. Corpus Christi 1999 pet. ref'd) _____ 17

Marin v. State, 851 S.W.2d 275, 278-80 (Tex. Crim. App. 1993) _____ 16

Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991) _____ 10

Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988) _____ 9

Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992) _____ 9

Reedy v. State, 214 S.W.3d 567 (Tx. App. -- Austin [3d Dist.] 2006) _____ 11

Roberson v. State, 16 S.W.3d 156, 165 (Tx. App. -- Austin 2000 pet. ref'd) _____ 10

Rodriguez v. State, 939 S.W.2d 211, 218 (Tx. App. -- Austin 1997 No pet.) _____ 12

Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003) _____ 9

Ward v. State, 143 S.W.3d 271, 274 (Tx. App. -- Waco 2004 pet. ref'd) _____ 9

State Statutes:

Tex. Pen. Code Ann. § 6.03 (a)(b)(c) (Vernon 2012) _____ 14

Tex. Pen. Code Ann. § 2.01 (West 2003) _____ 9

Tex. Pen. Code Ann. § 29.02 (a) (Vernon 2014) _____ 14

Tex. Pen. Code Ann. § 29.03 (2) (Vernon 2014) _____ 14

Tex. Pen. Code Ann. § 29.03 (a)(2) (Vernon 2014) _____ 15

Tex. Pen. Code Ann. § 29.02 (a)(1) (Vernon 2014) _____ 14

## Statement Regarding Oral Argument

Oral argument would be helpful, if appellant had the assistance of an Attorney of Law. Herein, the appellant waives oral argument due to his "Pro Se" procedure and his limit knowledge of law, and hereby do waives oral argument in good faith.

## Statement of the Case

This is an Petition For Discretionary Review (Pro se) of the decision in the Court of Appeals of the Sixth District at Texarkana, Texas. Appellant's appeal was ~~dismissed~~ affirmed on the judgment and sentence for the 354th Judicial District in Hunt County, Texas. The Appellant was convicted by jury for Aggravated Robbery.

## Statement of Procedural History

On the 15th day of May, 2015 the Sixth District Courts of Appeals at Texarkana, Texas Affirmed the judgment of the 354th Judicial District Court, Hunt County, Texas in Cause No 29295 & 06-14-00097-CR. because, legally sufficient evidence shows appellant's theft. with an Opinion.

No motion for rehearing was filed.

## Grounds For Review

(1) The Court of Appeals decision is in direct conflict with numerous other appeals courts regarding the same issue.

(2) The Court of Appeals did not conduct a neutral review of the evidence.

(3) The Court of Appeals ignored review standards and substituted its own theory as to what appellant should be charged.

(4) The Court of Appeals used jury's unsupported verdict for its holding that the evidence of appellant guilt to be factually sufficient.

(5) The Court of Appeals decision on a statute of law that only the Court of Criminal Appeals can correct.

(6) The Court of Appeals failed to adhere to the constitutionality of appellant claim of legal insufficiency of evidence.

(7) The Court of appeals have wrongfully decided an important constitutional error thats an important question of state and federal law that conflict with decision of the Court of Criminal Appeals and Supreme Court of the United States.

8

## Argument

Legal Sufficiency, the instant case presents a difficult question as to the legal sufficiency of the evidence to sustain the conviction for several reasons.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires every state criminal conviction to be supported by evidence that a rational trier of fact could accept as sufficient to prove all the elements of the offense charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068 (1970); Fisher v. State, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993). See also Tex. Pen. Code Ann. § 2.01 (West 2003); Ward v. State, 143 S.W.3d 271, 274 (Tex. App. - Waco 2004, pet. ref'd). Under the Fourteenth Amendment, the task of the appellate court is to consider all the evidence in the light most favorable to the verdict and determine if any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979); Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003); Cardenas v. State, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000). Reviewing courts are not fact finders. Our role is that of a due process safeguard, ensuring only the rationality of the trier of facts' finding of the essential elements of the offense beyond a reasonable doubt. See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). "If, based on all the evidence, a rationably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal." Fisher, 851 S.W.2d at 302 (quoting Narvaiz v. State, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992);

9

See also *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). The legal sufficiency of the evidence is a question of law. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991); *Roberson v. State*, 16 S.W.3d 156, 165 (Tex. App. -- Austin 2000, pet. ref'd).

In assaying all the evidence under the *Jackson* standard of review, a reviewing court must consider all evidence, rightly or wrongly admitted, which the trier of fact was permitted to consider. See *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The standard of review is the same for both direct and circumstantial evidence. *Guevara*, 152 S.W.3d at 49; *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). The State may prove its case by circumstantial evidence alone if it proves all the elements of the charged offense beyond a reasonable doubt. *Barnes v. State*, 62 S.W.3d 288, 297 (Tex. App. -- Austin, pet. ref'd).

In *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), we stated that a court of appeals is "vested with the authority to review fact questions in criminal cases." We also determined that the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979), legal-sufficiency standard of review, where the evidence is viewed in the light most favorable to the prosecution, was not proper for a factual-sufficiency review. *Clewis*, 922 S.W.2d at 128. Instead, rather than viewing the evidence in the light most favorable to the prosecution, the courts of appeals provide a neutral review. Deference is given to the jury verdict, as well as to determinations involving the credibility and demeanor of witnesses. *Cain v. State*, 958 S.W.2d 404 at 407, (Tex. Crim. App. 1997). We stated that the verdict will be set aside only if the evidence supporting the verdict is so weak as to render the verdict clearly wrong and manifestly unjust. A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience."

or "clearly demonstrates bias."

Appellant contends, that the Court of Appeals did not conduct a neutral review of the evidence; giving all the evidence (all of States evidence is Steven Cook [the victim] alone). Appellent contends, that the jury's verdict was unsupported by proof of all the essential elements of the offense charged. Relying on Reedy V. State, 214 S.W. 3d 567, (Tex. App. - Austin [3rd Dist.] 2006). Each element of a criminal offense must be proven beyond a reasonable doubt for the evidence to be sufficient. The stacking of an inference upon an inference is not considered evidence. The legal sufficiency of the evidence is based on due process. In final analysis, criminal substantial due process protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

"Fact: Something known to have occurred or to be true; And Evidence: The means of proving or disproving an alleged fact, testimony, Exhibits..... offered as proof."

Appellant contends that conformity with Websters clear definition of the two above words "facts" and "Evidence". It is clearer to see that the appellate courts did not conduct a neutral review of the evidence; rather it ignored evidence supporting the jury's verdict and promoted its own assumption. (See Mem. Opinion Pg. 5) "The fact remains, however, that Jackson Rifled through the Console before he left the parking lot that day - before anybody else could have possibly done so, including Cooks friend." Appellant contends that the appellate courts is in direct conflict with holding in Dunn V. United States, 284 U.S. 390, 393, 52 S.Ct. 189 (1932), stating that consistency in the verdict is not necessary and that courts of appeals should not speculate about the reason for the jury's verdict. Appellant also cites United States V. Powell, 469 U.S. 57, 105 S.Ct. 471 (1984), upholding the Dunn Rule.

Appellant fail to agree with appellate courts speculated opinion. Mental culpability is of such a nature that it generally must be inferred from circumstances under which the prohibited act occurred. Mere presence at the scene or in the vicinity of a crime, or even flight from the scene, either standing alone or combined, is insufficient to sustain a conviction. King v. State, 638 S.W.2d 903 (Tex. Crim. App. 1982). There's no supporting evidence that was presented that appellant was near scene, nor any supporting evidence presented at trial to substantiate the speculating opinion of Jackson being the only person "could have taken the property." Cooks testified he told his friends to go see what was missing. Every person in the presence or vicinity of Cooks truck, is potustial suspects... clearly leaves a reasonable doubt. Mem. Opion is unsupported by proof of any guilt of theft, or aggravated Robbery. Actual commission of offense of theft is not prerequisite to commission of offense of Robbery as the gravamen of Robbery is the assaultive conduct and not the theft. Appellant contends the appellate courts ignored holding in the Jackson standard, and SEE Brudman v. State, 66 S.W.3d 283 (Tex Crim App. 2001), by substituting its own theory as to the cause of the aggravated Robbery. In Brudman, stated that "it is a jury, not a reviewing court, that accepts or rejects reasonably equal competing theories of result. id. at 287. Robinson v. State, 16 S.W.3d 156 (Tex. App.-- Austin 2000 pet. ref'd). In analyzing a challenge to the legal sufficiency of the evidence, a reviewing court does not realign, disregard or weigh the evidence. Rodriquez v. State, 939 S.W.2d 211, 218 (Tex. App.--Austin 1997, no pet.); Also King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

Appellant contends that the court of appeals erred in holding the evidence was legally sufficient to establish appellant had committed aggravated Robbery because, the single essential element (theft) was sufficient evidence alone, to support jury's verdict.

12

Here, as will be shown, the evidence was factually and legally insufficient to support a guilty verdict against appellant for the Aggravated Robbery of Steven Cook, as alleged in the indictment. The evidence was unsupportive, unrelated and in conflict with the physical facts to be proven. The only evidences the State presented was the victim testimony. No eyewitnesses, exact day uncertain, non-presence of appellant, no fingerprints, no medical evidence, no alleged deadly weapon, there was no material evidence presented at trial to constitute proof of appellant's guilt beyond a reasonable doubt of any essential elements of the offense of aggravated robbery (2) charged. V.T.C.A. Pen. Code §§ 29.02(a)(1), 29.03(a)(2).

Elements of aggravated Robbery (29.03): 1.) in the course of committing theft, 2) with intent to obtain or maintain control of property, 3.) knowingly and intentionally, 4.) threatens or places another in fear of imminent bodily injury or death, and 5.) uses or exhibits deadly weapon. (Appellant was not charge under this statute).
Elements of Robbery (29.02): 1) in the course of committing theft, 2.) with intent to obtain or maintain control of property, 3.) intentionally, knowingly, or recklessly causes bodily injury to another. (which the appellant stand charge under § 29.02(a)(1) and § 29.03(a)(2).

The essential element of aggravated Robbery is threat or engendered fear of imminent bodily injury or death generated by presence of deadly weapon, with use or exhibition of weapon being merely incidental to its presence. (SEE § 29.03(a)(2)).

Two criminal acts are implicit in the offense of aggravated Robbery: "a theft" and "a assault." The legislature in defining the offense expressly placed two requisite mental state into the language of the statute: the offender must act with intent to obtain and maintain control over property, and his threatening or placing the victim in fear must be intentionally or knowingly.

In the instant case, the state was required to prove, as charged in the indictment, and/or, as in the jury charge.

13.

Tex. Pen. Code Ann. §§ 29.02(a)(1), 29.03(a)(2) (V.T.C.A. Pen. Code § 6.03 (abc) (Vernon 2012).

"(1) On May 21, 2013, (2) in Hunt County, Texas, (3) the Appellant, (4) did then and there while in the course of committing theft and with intent to obtain or maintain control of property, (5) intentionally, knowingly, or recklessly cause bodily injury to Steven Cook ▓▓▓ by shooting him in the leg or body; (Further, a deadly weapon was used during the commission of the offense, namely: a firearm).

However, the appellate courts has applied an improper standard or incorrect review standard, by actually substituting its own statutory language for that of the grand jury, the state prosecutor and the trial court jury charge; substituting its speculated theory for that of the jury's verdict. (See: "Mem. Opin. Pa 3").

"In this case, Jackson committed aggravated Robbery if

(1) Jackson committed theft of property with intent to obtain or maintain control of the property, and (2) in the course of this theft, Jackson intentionally, knowingly, or recklessly caused serious bodily injury to Cook by shooting Cook in the leg. (However, this is an entirely different statutory language than what Jackson is charged). See: Tex. Pen. Code Ann §§ 29.03(a)(1) + 29.02(a).

Jackson V. Virginia, the appellate courts is to consider all the evidence in the light most favorable to the verdict and determine if any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense. Appellant contends that appellate courts, is in direct conflict with holding in Cook Supra, where we stated that courts of appeals should examine all evidence impartially and give deference to the jury's verdict. See Also Roberson, 16 S.W.3d at 164. In analyzing a challenge to the sufficiency of the evidence, a reviewing court does not realign, disregard, or weigh the evidence. This appellate courts have failed to adhere its vested authority and substituted its own assumption of appellant's guilt of its own theory. ▓

14.

Appellant contends that the appellate courts favorable interest in the prosecution, have caused it to attempt to realign the offense, ignore its role being that of a due process safeguard, and favorably weigh the evidence, against appellant challenge to the legally insufficiency of the evidence. Herein, the appellate courts have ignored evidence being so weak as to render the verdict clearly wrong and manifestly unjust, it "shocks the conscience" and "demonstrates bias." The evidences is so weak that it renders the jury's verdict beyond a reasonable doubt to render the lesser included offense, of theft, and its unsupported by proof of the essential element. Appellant's conviction for aggravated Robbery have not been concluded from all the evidence. Instead, appellant have been convicted for an offense other than what he stood trial on. Appellant continue to contend the evidence in this cause 29295 number for the alleged aggravated Robbery (V.T.C.A. Pen. Code §§ 29.02(a)(1) and 29.03(a)(2)) is factually and legally insufficient to sustain an convictions beyond a reasonable doubt, as charged in indictment under provision as charged.

"Under Jackson standard, would the evidence be weak, lacking and unsupportive, when it cause an rational trier of facts to render a verdict on unsupported proof of essential element for any other lesser included offense, other than the offense charged against appellant..." OR, would it be clearly wrong and manifestly unjust that it actually "shocks the conscience" and "demonstrates bias", that constitutes cruel and unusual punishment, and directly violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution?" The Fourteenth Amendment guarantee of due process requires that this court reverse and order an acquittal. See Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

Reviewing courts are not facts finders. Their role is that of a due process safeguard, ensuring only the rationality of the trier of facts' finding of the essential elements of the offense beyond a reasonable doubt. Brief survey of the evidence, reflects a reasonable doubt.

15.

(2) Appellant Contends his failure to preserve Wrongful Electronic Restraint

Appellant was ordered to remove his shirt by the Court so that the jury and testifying witness could review his tattoo; even after the Court was notified that appellant was wearing a "Electronic immobilization System" (Namely: Stun Belt). When the order was made by the Court. Appellant Contends that trial Court Error in failing to take effective measure to prevent the jury from seeing the appellant's restraints, after being notified by defense Counsel. It is evidence in the trial Record that the Appellant was actually seen by the jury in Restraint. After the Court's order, the Record Reflects that the trial judge order appellant to remove his shirt in front of the jury.

Herein, Court of appeals speculated or substituted its opinion with Perez V. United States, 501 U.S. 923, 936 (1991) (Citing United States V. Gagnon, 470 U.S. 522, 528 (1985) (absence of objection Constitutes waiver of Right to be present at all Stages of Criminal trial). The appellant contends that appellate Court is in direct Conflict with holding in Marin V. State, 851 S.W.2d 275, 278-80 (Tex. Crim App. 1993), (appealable Erros fall into three Categories: 1) Violation of forfeitable Rights, which must be preserved for appeal by timely and specific objections; 2) Violation of Rights that must be expressly waived, which may be vindicated on appeal in the absence of such a waiver; and 3) Violation of a Systemic prohibition or Requirement not optional with the parties at trial, which may always be Remedied on appeal, Regardless of waiver or forfeiture). Two and Three apply to appellant in this case. The Constitutional Error was the infringement of his Constitutional presumption of innocence. Citing Illinois V. Allen, 397 U.S. 337, 344; 90 S.Ct. 1057 (1970), When the jury sees him Restrained is the infringement of his Constitutional presumption of innocence; and all Efforts should be maintained to prevent the jury from seeing the defendant's Restraints. "Except where there has been a showing of exceptional Circumstance or a manifest need for such

16

Restraint." Long V. State, 823 S.W.2d 259, 282-83 (Tex. Crim. App. 1991).

Mendoza V. State, 1 S.W.3d 827-830-31 (Tex App. Corpus Christi 1999, pet. Refd). "on appeal the Role of [an appellate] Court is to determine whether the trial court abused its discretion in authorizing the restraint."

Appellant Contends, that the appellate Courts ignored the Constitutional Error, and Substituted its own decision stating "ERROR wasn't preserved for Review". See Martin Supra..

Appellant urges this court to find that the trial court abused its discretion to allow appellant to be SEEN in shock belt restraint because, it did not make specific finding on the record to justify the restraints. This Constitutional Error was examined on Same issue out of Hunt county in Glasscock V. State, 061312 TXCA6, 06-11-00239-CR (mem. Opinion). the defendant was made to wear shackles and prison attire during the punishment phase of his trial. To that issue a shock belt was visible and SEEN by jury in this instant case, and trial counsel attempted to stop those actions.

Executed on the 9th day of July 2015. A.D.

Respectfully Submitted,

Jackson. Willie Frank
TDCJ-ID # 1931429
1271 FM 3522
Robertson Unit
Abilene, Tx. 79601

cc/files: WF

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that his convictions in the above entitled and numbered cause be reversed and acquit him. Appellant further prays for all other lawful relief to which may be entitled, at law or in equity.

Respectfully Submitted,

Jackson, Willie Frank #1931429
Robertson Unit
1271 FM 3522
Abilene, Tex. 79601

cc/files:

## Inmate's Declaration

I, Willie Frank Jackson, pro se, am the appellant and being presently incarcerated in The Texas Department of Criminal Justice - ID; Robertson Unit, 1271 FM 3522; Abilene, Texas, 79601, declare under penalty of PERJURY that, according to my belief, the facts stated in the above Petition for Discretionary Review are true and correct.

Executed on this the 9th day of July 2015. A.D.

Respectfully Submitted.

_Jackson, Willie Frank_ #1931429
Jackson, Willie Frank #1931429
Robertson Unit
1271 FM 3522
Abilene Texas 79601

## Certificate of Service

I hereby certify that a true and correct copy of the above and foregoing instrument (PDR) was forwarded to Travis County, Texas Court of Criminal Appeals; P.O. Box 12308 Austin, Texas 78711. On this the 9th day of July 2015, and by U.S. Postage Service.

Respectfully Submitted

_Jackson, Willie Frank_ #1931429
Jackson, Willie Frank #1931429
Robertson Unit
1271 FM 3522
Abilene, Texas 79601

29.



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00097-CR

---

WILLIE FRANK JACKSON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 29,295

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Near some Greenville apartments, Willie Frank Jackson stood over Steven Ray Cook—as Cook lay on the ground after having been shot in the leg by Jackson—pointed his gun at Cook, and demanded that Cook tell him the location of Cook's wallet. After being told that the wallet was in the console of Cook's nearby truck, Jackson was seen rummaging through Cook's truck. The wallet was later found, less the forty dollars previously in it, along the path of Jackson's departure from the scene.

Jackson was convicted of aggravated robbery and, after enhancement of the charges to habitual offender status, was sentenced to ninety years' incarceration. We affirm the trial court's judgment, because (1) legally sufficient evidence shows Jackson's theft and (2) Jackson failed to preserve his complaint of wrongful electronic restraint.

*(1)    Legally Sufficient Evidence Shows Jackson's Theft*

Pointing to a perceived lack of evidence of theft, Jackson claims the evidence is insufficient to support his aggravated robbery conviction. We disagree.

In evaluating legal sufficiency of the evidence, we review all evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Brown v. State*, 333 S.W.3d 606, 608 (Tex. App.—Dallas 2009, no pet.). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to

2

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* In this case, Jackson committed aggravated robbery if (1) Jackson committed theft of property with the intent to obtain or maintain control of that property and (2) in the course of this theft, Jackson intentionally, knowingly, or recklessly caused serious bodily injury to Cook by shooting Cook in the leg. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). Jackson disputes only the theft element of aggravated robbery. Theft is the unlawful appropriation of property, without the effective consent of the owner, with the intent to deprive the owner of the property. *See* TEX. PENAL CODE ANN. § 31.03 (West Supp. 2014).

The record indicates that Cook was visiting a friend at an apartment complex in Greenville on the evening of the robbery. Cook left the apartment complex around 7:00 p.m. to go to a convenience store. Cook returned to the apartment complex a short time later, parked his truck, and noticed that Jackson was walking toward him. Jackson was wearing an oven mitt which concealed a gun. After striking Cook in the face, Jackson pointed the gun directly at Cook's head and pulled the trigger. The gun merely clicked. Jackson told Cook, who was seated in the driver's seat of his truck with the door open, "[T]hat one's free. . . .You better move." Cook did not

3

understand what Jackson wanted. At that point, Jackson shot Cook in the lower leg. Jackson again demanded that Cook move. Cook got out of the truck and began to trot off, falling after about thirty feet. After Cook fell, he saw Jackson standing over him with the gun pointed at his face. When Jackson asked Cook where his wallet was, Cook told him it was in the console of his truck. Cook then saw Jackson rummaging through his truck, after which Jackson began to walk away from the truck. Cook was able to make his way back to his friend's apartment, where he told the friend of his encounter with Jackson and cleaned his leg wounds. Cook, believing his wounds were not serious, bandaged his leg and then asked his friend to find out what was missing from his truck.

The following day, Cook returned to the apartments to check on his truck and discovered that the truck keys were missing. Cook's wallet was not in the truck, nor was a .22 caliber Stinger hand gun he kept in the console. After walking in the general direction of Jackson's route of departure on the previous day, Cook found his wallet lying on the ground. He discovered, though, that forty dollars was missing from the wallet. After reporting the crime to the police, Cook went to the hospital.

Jackson claims this evidence fails to show that he actually deprived Cook of his money and gun. He claims that, because Cook was bleeding after the blow to his face, he was unable to clearly see whether Jackson took the missing items from Cook's truck. He further claims that, because Cook's friend looked in the truck after Jackson left to determine if anything was missing and because the truck might have been left unlocked in the parking lot overnight, it is mere speculation

4

to conclude Jackson took money from Cook's wallet as well as the small gun that was stored in the truck's console.

As described above, after Cook told Jackson that his wallet was in the console of his truck, he witnessed Jackson rifling through the contents of the truck and then leaving the apartment parking lot on foot. The following day, Cook found his wallet in Jackson's path of travel away from the parking lot. The wallet was missing the forty dollars, and Cook's gun was missing from the truck's console. That Cook's vision might have been impaired due to bleeding from a wound is a factor for the jury to consider and resolve. The jury also heard testimony that Cook's friend had access to the truck and that the truck could have been left unlocked overnight. These were likewise factors for the jury to consider and resolve. The fact remains, however, that Jackson rifled through the console before he left the parking lot that day—before anybody else could have possibly done so, including Cook's friend. Considered in the light most favorable to the jury's verdict, a rational jury could have found, beyond a reasonable doubt, the elements of aggravated robbery. The evidence was sufficient to support the jury's verdict.

*(2) Jackson Failed to Preserve His Complaint of Wrongful Electronic Restraint*

During the punishment phase of trial, Jackson was asked to remove his shirt so that the testifying witness could view his tattoos. Evidently, under his shirt, Jackson was wearing a shock belt restraint[1] when the request was made. Jackson complains of trial court error in failing to make

---

[1]A shock belt or stun belt

> is a device placed around a defendant's midsection that uses an electric shock to temporarily disable the defendant if his actions pose a security threat. The belt is controlled by a remote device held by a security official in the courtroom. If the belt is activated, the defendant will receive a powerful electric shock sufficient to temporarily incapacitate him.

5

specific findings on the record to justify imposition of the restraint at trial. Jackson further contends that, because the jury was able to see that he was wearing an electronic restraint, he is entitled to a new punishment trial.

The issue arose in connection with Jackson's tattoos, which the State sought to prove were evidence of Jackson's membership in a prison gang known as the Mandingo Warriors. The State questioned David Johnson, with the Texas Department of Criminal Justice, about tattoos indicative of Mandingo Warrior membership. Although Johnson had viewed photographs of Jackson's tattoos, he had never met Jackson. When the State sought to elicit testimony from Johnson authenticating photographs of Jackson's tattoos, Jackson objected, stating that, because Johnson did not take the photographs, he was not the proper person to authenticate them. In response, the State asked "that the defendant remove his shirt and show the jury so that they can all properly authenticate it . . . ." The following colloquy ensued:

[DEFENSE COUNSEL]: You want to take your shirt off --

[THE STATE]: We can do that in private or in front of the jury.

THE COURT: All right.

[DEFENSE COUNSEL]: So do you want to do it in front of the jury or do you want to do it in just a little bit?

[DEFENDANT]: I'll do it right there in front of the jury. It don't matter.

State v. Belcher, 183 S.W.3d 443, 445 n.1 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citation omitted); see Taylor v. State, 279 S.W.3d 818, 820 n.1 (Tex. App.—Eastland 2008, pet. ref'd).

6

THE COURT: All right. If you'll step over here and raise your shirt and show them your tattoos.

[DEFENSE COUNSEL]: Hold on, Your Honor, just a second. Can we approach?

Just a second, Mr. Jackson.

They put a shock belt --

[THE STATE]: If he's willing to take his shirt off, then let him take his shirt off.

[DEFENSE COUNSEL]: No. No. No. No. No. What I'm saying is --

THE COURT: He's already taken his shirt off.

[DEFENSE COUNSEL]: Huh?

THE COURT: His shirt's off.

[DEFENSE COUNSEL]: Oh, nevermind. Nevermind.

THE COURT: All right. If you'd step over in front of the jury, sir.

[THE STATE]: And since this is the witness that's testifying, if we could show the witness? That's really the only person I need to see them.
That's far enough.

THE COURT: All right. Let the record reflect the defendant has removed his shirt and has marched in front of the jury so they could see any tattoos that he might have.

As is clear from the foregoing colloquy, defense counsel did not object to the use of an electronic restraint or to the removal of Jackson's shirt in front of the jury. While counsel seemed to indicate that Jackson was wearing a shock belt, no objection was stated on that or on any other basis. Further, when counsel learned that Jackson had removed his shirt, any objection—to the

7

extent one was articulated—was abandoned when counsel told the court "nevermind [sic]." No previous or subsequent mention of a shock belt appears in the record.

The Fifth and Fourteenth Amendments to the United States Constitution prohibit the use of physical restraints visible to the jury unless the trial court determines that such restraints are justified to ensure physical security, escape prevention, or courtroom decorum. *Deck v. Missouri*, 544 U.S. 622, 628 (2005), *abrogated on other grounds by Fry v. Pliler*, 551 U.S. 112 (2007). However, even the most basic rights of criminal defendants are subject to waiver. *Perez v. United States*, 501 U.S. 923, 936 (1991) (citing *United States v. Gagnon*, 470 U.S. 522, 528 (1985) (absence of objection constitutes waiver of right to be present at all stages of criminal trial); *Levine v. United States*, 362 U.S. 610, 619 (1960) (failure to object to closing of courtroom is waiver of right to public trial); *Segurola v. United States*, 275 U.S. 106, 111 (1927) (failure to object constitutes waiver of Fourth Amendment right to be free from unlawful search and seizure)). Here, Jackson did not object to the use of the electronic restraint at any point during the trial.

"For a party to preserve a complaint for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection." *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014); *see* TEX. R. APP. P. 33.1. "Almost all error—even constitutional error—may be forfeited if the appellant failed to object." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *see also Taylor v. State*, 279 S.W.3d 818, 821 (Tex. App.—Eastland 2008, pet. ref'd) (issue of whether defendant properly restrained by use of stun belt at punishment phase not preserved for appellate review where defendant failed to object); *Cedillos v. State*, 250 S.W.3d 145, 150 (Tex. App.—Eastland 2008, no pet.) (appellant waived constitutional due process

complaint regarding shackling during trial because he failed to object on record); *see also Kelley v. State*, No. 05-09-01438-CR, 2012 WL 2628074, at *5–6 (Tex. App.—Dallas July 6, 2012, pet. ref'd) (mem. op., not designated for publication) (complaint of shackling at trial not preserved for appellate review when defendant failed to object at trial); *Pereida v. State*, No. 13-09-00354-CR, 2010 WL 2783743, at *6 (Tex. App.—Corpus Christi July 15, 2010, pet. ref'd) (mem. op., not designated for publication).

The record here does not contain an explicit description of the reasons for the electronic restraint. The record likewise does not indicate—assuming the restraint was visible to the jury when Jackson removed his shirt—that the jury perceived the device as an electronic restraint. These particulars are missing because Jackson did not object. Consequently, the issue has not been preserved for our review[2] and is therefore overruled.

---

[2]Even if Jackson had preserved this complaint for our review and error was determined to have occurred, it is unlikely Jackson was prejudiced. The event occurred during the trial's punishment phase. After conviction, the defendant no longer enjoys the presumption of innocence. *See Deck*, 544 U.S. at 632. Texas cases have also held that the presumption of innocence does not apply at the trial's punishment phase. *Marquez v. State*, 725 S.W.2d 217, 227 (Tex. Crim. App. 1987), *overruled on other grounds by Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992); *see, e.g., Lewis v. State*, 866 S.W.2d 272, 277 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). The punishment phase here involved four prior felony convictions alleged by the State. Jackson pled "true" to three of these prior conviction allegations, and the trial court instructed the jury to find each such conviction allegation to be true. Jackson pled "not true" to the fourth alleged prior conviction, involving the possession of a deadly weapon in a penal institution. The three prior conviction allegations to which Jackson pled true were sufficient to enhance his punishment range to that of a habitual felony offender. *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014).

9

We affirm the trial court's judgment.

Josh R. Morriss, III  
Chief Justice

Date Submitted:     May 14, 2015  
Date Decided:      May 15, 2015

Do Not Publish